Paula SMITH, Plaintiff,

v.

**BOARD OF COUNTY COMMISSIONERS OF JOHNSON COUNTY, KANSAS, et al., Defendants.**

No. CIV.A.98–2152–KHV.

United States District Court, D. Kansas.

March 31, 2000.

Lee J. Hollis, Prairie Village, KS, Ruth M. Benien, Benien Law Offices, Chtd., Kansas City, KS, for Plaintiff.

Donald D. Jarrett, Frank S. Reeb, Michael M. Shultz, Johnson County Legal Dept., Olathe, KS, Michael F. Delaney, Spencer, Fane, Britt & Browne, Kansas City, MO, Daniel B. Boatright, Spencer, Fane, Britt & Browne, Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on defendants' *Motion For Summary Judgment* (Doc. # 38) filed April 26, 1999 and *Plaintiff's Motion To File First Amended Complaint And Suggestions in Support Thereof* (Doc. # 104) filed March 15, 2000.

After carefully considering the parties' briefs, the Court is prepared to rule. For reasons set forth below, defendants' motion for summary judgment is sustained and plaintiff's motion to amend is overruled.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991).

Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Motion To Amend Standards

The Court shall freely give plaintiff leave to amend "when justice so requires." Fed.R.Civ.P. 15. Motions to amend are matters of discretion for the trial court, *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991), and a refusal to grant leave to amend should normally be justified by factors such as futility, undue delay, undue prejudice to the non-moving party, or bad faith of the moving party. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993).

### Procedural Background

Plaintiff, a former employee of Johnson County Developmental Supports ("JCDS"), brought suit against JCDS and the Board of County Commissioners of Johnson County, Kansas under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44–1111 et seq., the Kansas Acts Against Discrimination, K.S.A. § 44–1001 et seq., and state common law, alleging employment discrimination, harassment, retaliation, breach of contract and intentional infliction of emotional distress. *See Complaint* (Doc. # 1)

filed April 2, 1998. After plaintiff filed suit, defendants placed her on administrative leave. Plaintiff responded by filing a charge of retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has requested leave to amend her complaint to include the additional retaliation claim. On June 8, 1999, the parties and counsel attended a mediation session regarding both the underlying suit and the charge of retaliation. At the end of the session, the parties reached an oral agreement to resolve the claims in both this case and the EEOC proceeding. The mediator recited the operative terms of the agreement and no party objected. In essence, the agreement provided that defendants would pay plaintiff's salary through December 31, 1999 (approximately $35,000.00 subject to all benefits and deductions, etc.), though plaintiff would not perform any job duties during that period; that defendants would pay plaintiff $30,000.00 up front, with up to $2,500.00 in taxable costs; and that defendants also would pay $20,000.00 to plaintiff's counsel. In return, plaintiff agreed to return all documents in her possession, dismiss both her lawsuit and her EEOC charge, immediately submit a letter of resignation effective December 31, 1999, and refrain from reapplying for employment with defendants. In addition, the parties mutually agreed that they would not disparage one another and that the agreement would remain confidential to the extent consistent with Kansas law. *See* Transcript of Hearing on August 26, 1999 (Doc. # 88) at 61–62, 69–74, 86–89. The parties agreed that defense counsel would draft written settlement documents which embodied the terms of the agreement.

On June 9, 1999, the day after the mediation session, counsel for all parties informed the Court that they had settled all claims in the suit. Accordingly, the Court ordered that the case be administratively terminated without prejudice to the parties' rights to reopen the proceedings for good cause shown. *See Order* (Doc. # 56) filed June 9, 1999. Plaintiff later decided that she did not want to settle. Plaintiff refused to sign the written settlement agreement which defense counsel had prepared after consultation with plaintiff's counsel, and she requested that the case be reopened. Defendants asked the Court to enforce the oral agreement reached at mediation. At a hearing on August 26, 1999, the Court overruled plaintiff's motion to reopen the case and sustained defendants' motion to enforce the settlement agreement. Plaintiff asked that the Court reconsider these rulings. On November 22, 1999, the Court sustained plaintiff's motion in part and overruled it in part. *See Memorandum And Order* (Doc. # 89) filed November 22, 1999. On reconsideration, the Court held that the parties had knowingly and voluntarily reached an oral settlement agreement but that the release of plaintiff's ADEA claim was invalid and should be excluded from the terms of the agreement. *See id.* The Court ordered the parties to finalize and execute the settlement agreement by December 1, 1999. *See id.* Plaintiff again asked that the Court reconsider its rulings. On December 30, 1999, the Court overruled plaintiff's motion except that to the extent plaintiff's EEOC charge related to her ADEA claim, the Court excused plaintiff from any obligation to withdraw it. *See Memorandum And Order* (Doc. # 94) filed December 30, 1999 at 5–6.

At the time the case was administratively terminated on June 9, 1999, based on the parties' settlement agreement, defendants' motion for summary judgment was pending. *See Motion For Summary Judgment* (Doc. # 38) filed April 26, 1999 and plaintiff's opposition briefs (Doc. 46, 47, 48 and 50) filed May 26 and 27, 1999. Defendants' reply brief was due June 11, 1999. On November 22, 1999, after the Court held that plaintiff's waiver of her ADEA claim was invalid, it reinstated defendant's motion for summary judgment with respect to plaintiff's ADEA claim and allowed defendants to file a reply brief in support of their motion. Plaintiff has not requested leave to file any additional briefing on defendants' motion.

█ On August 30, 1999, plaintiff appealed the Court's decision to enforce the settlement agreement and its refusal to reopen the case. *See Notice Of Appeal* (Doc. # 75). Plaintiff has pursued the appeal even though the Court later reinstated her ADEA claims based on a motion for reconsideration. An effective notice of appeal transfers jurisdiction from the district court to the court of appeals. *See Howard v. Mail–Well Envelope Co.*, 150 F.3d 1227, 1229 (10th Cir.1998) (citing *Stewart v. Donges*, 915 F.2d 572, 575 (10th Cir.1990)). The transfer, however, affects only those aspects of the case involved in the appeal. *See Howard*, 150 F.3d at 1229 (citation omitted). "Thus, when an appeal is taken from a limited interlocutory ruling, as opposed to one that affects the litigation as a whole, the district court may proceed with the case." *Id.* (citations omitted). Here, at most, the appeal involves the enforceability of the parties' oral agreement to settle plaintiff's non-ADEA claims.[1] Accordingly, to the extent that it relates to plaintiff's ADEA claims, the Court has jurisdiction to decide defendants' motion for summary judgment. The Court also has jurisdiction to decide plaintiff's motion to amend her complaint to add a new retaliation claim.

As a result of the parties' settlement agreement, plaintiff's only remaining claims are those under the ADEA. Accordingly, the Court includes only those facts and arguments which are related to such claims. The Court need not consider the following facts related to plaintiff's other claims: plaintiff's statement of facts ("plaintiff's SOF") ¶¶ 9–14, 16–30, 32–33, 36, 38, 40–41, 43, 46–47, 54, 57–59, 61, 78, 81, 84, 99–101, 103, 107, 118–25 and 129–30 included in *Plaintiff's Response To Defendant's Motion For Summary Judgment* (Doc. # 46) filed May 26, 1999.

As of December 31, 1999, pursuant to the parties' oral settlement agreement, plaintiff no longer works for JCDS.

## Analysis

### I. Defendants' Motion For Summary Judgment

#### A. Factual Background

█ For purposes of defendants' motion for summary judgment, the following material facts are undisputed, deemed admitted or, where disputed, viewed in the light most favorable to plaintiff.[2]

Plaintiff is a 48 year old female. In May 1982, JCDS (formerly known as Johnson County Mental Retardation Center) hired plaintiff. JCDS is a community based agency which arranges and provides services for individuals with mental retardation and other developmental disabilities. From May 1982 until January 4, 1993, plaintiff was the Director of Johnson County Industries, the vocational division of JCDS. Until 1992, JCDS was primarily organized around three divisions: vocational, residential and social services.

---

1. The appeal may be limited to only those provisions of the Court's prior orders which may be construed as an injunction. *See* 28 U.S.C. § 1292(a)(1); *Howard*, 150 F.3d at 1229 (no transfer of jurisdiction if appeal taken from nonappealable order). In previous briefing before this Court, the parties agreed that the Court's prior orders did not constitute an injunction.

2. In support of her age discrimination claims, plaintiff references numerous inadmissible hearsay statements. Relying on *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991), plaintiff argues that the Court may consider hearsay statements if the out-of-court declarant is listed on one of the parties' witness lists and can be subpoenaed for trial. The Tenth Circuit has stated, however, that "hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because '[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.' " *Thomas v. International Business Machines*, 48 F.3d 478, 485 (10th Cir.1995). Likewise, the Tenth Circuit has held that district courts may not consider hearsay evidence in depositions submitted in support of or in opposition to a motion for summary judgment. *See Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir.1995).

*1993 Reorganization*

Effective January 4, 1993, JCDS assigned plaintiff to the Professional Services Team Leader position, the third highest position in the agency—behind the Executive Director and the Support Services Team Leader. JCDS did not alter plaintiff's salary, grade level (grade level 15) or benefits. Although JCDS considered plaintiff for other positions, it selected plaintiff for the Professional Services Team Leader position because of her experience in the field, her educational level and the fact that the position would allow plaintiff an opportunity to improve her leadership skills. JCDS reduced the number of staff employees that plaintiff supervised in her new position from 60 to 17.[3] Plaintiff considered the job change a demotion. In the 1993 reorganization, JCDS demoted two other females over the age of 40, Sheryl McNevin and Mary Ellen Christiansen.

As part of the reorganization, JCDS assigned Tim Arnold to the Support Services Team Leader position (grade level 15). JCDS considered Arnold the best qualified for the position because of his budget and administrative experience. JCDS also assigned Tom Sullivan to the Community Team Leader position and reduced his salary grade from 15 to 14 although his salary was not reduced. JCDS considered Sullivan the best qualified for the position because of his ties to various community groups and his educational experience. Finally, JCDS assigned Steve Rinkel to the Agency Team Leader position.

In the 1993 reorganization, JCDS altered every position in the agency. No employee received a loss of salary or pay, however, and JCDS did not eliminate any positions. As part of the reorganization, the salary grade for case managers increased from 12 to 13. JCDS thought that the State of Kansas was going to require all case managers to obtain a masters degree in social work so JCDS made it a requirement for the position. JCDS informed the current case managers that they had three years to obtain a masters degree. Most of the older female case managers had masters degrees or obtained them after JCDS required them in 1993.

Prior to the effective date of the 1993 reorganization, plaintiff told an Employment Assistance Program ("EAP") counselor that "she wanted to talk about her work concerns, the legality of some of the things that were happening, [and] the harassment that was going on."[4] Plaintiff's SOF ¶ 80. The counselor told plaintiff that she was in a no-win situation and that plaintiff should just leave. Although JCDS paid for the counselor, she was not a JCDS employee.

*1995 Reorganization*

In the 1995 reorganization, defendants reduced plaintiff's supervisory duties from 17 individuals to 14 case managers. Plaintiff lost supervisory duties over a psychologist, an occupational therapist and a nurse. JCDS transferred these duties to Clark Achelpohl. Dennis Tucker, Associate Director of JCDS, recommended the change

3. Plaintiff claims that comparable male employees and younger employees were treated more favorably in the 1993 reorganization. *See* plaintiff's SOF ¶¶ 62–63. Plaintiff identifies these individuals as Tim Arnold, Clark Achelpohl, Tom Sullivan, Steve Rinkel and Earl Kilgore. Except for Arnold (who plaintiff identified elsewhere as under 40 *in 1987*), plaintiff has not stated the ages of the named individuals. Absent such evidence or evidence of Arnold's age in 1993, the Court will exclude paragraph 62 of plaintiff's statement of facts with respect to plaintiff's age claims. Plaintiff cites similar evidence regarding the 1995, 1996 and 1997 reorganizations. *See* plaintiff's SOF ¶¶ 94, 102, 125. The Court

will exclude paragraphs 94, 102, and 125 with respect to plaintiff's ADEA claims for the same reason as it excluded paragraph 62.

4. Plaintiff references surveys of JCDS employees conducted from 1992 through 1994 which allege "harassing and discriminatory conduct" by JCDS. Plaintiff's SOF ¶ 48. Plaintiff does not recall if "age" or "gender" discrimination was specifically mentioned in the surveys. *See* plaintiff's depo. at 218–19. Moreover, plaintiff has not shown that the comments of others on the survey satisfy any hearsay exception. The Court therefore will not consider plaintiff's summary of the surveys with respect to her ADEA claim.

to Mark Elmore, the Executive Director of JCDS, because Tucker thought that Achelpohl was being underutilized in his position and plaintiff was not providing adequate leadership. After the reorganization, plaintiff reported to both Elmore and Tucker. Pursuant to state rules and regulations, plaintiff thought that case managers should report only to Elmore. Defendants did not explain to plaintiff why she was no longer going to supervise the three professional staff members, and she considered the job change a demotion.

Plaintiff also thought that her 1995–96 appraisal was unfair and based on subjective factors. Plaintiff's 1995–96 appraisal was the only appraisal in 16 years that rated her low, i.e. "fails to meet" expectations. Plaintiff does not know how JCDS used the appraisal but she thinks that JCDS used it to demote her and her case managers.

*1996 Reorganization*

In late 1995, in an effort to reposition the organization based on anticipated changes at the state level, JCDS leadership staff began to review the agency's structure regarding case management, staffing and funding. The Kansas Developmental Disabilities Reform Act went into effect on January 1, 1996. Pursuant to the act and implementing regulations, JCDS had to reduce the number of clients assigned to each case manager. This requirement directly increased JCDS staffing level requirements without a corresponding budget increase. Accordingly, JCDS created three Case Management Coordinator positions, reassigned plaintiff and Clark Achelpohl to fill two of the positions, and hired Tara Gunn to fill the remaining position. The new positions focused on direct case management services and team leadership for small groups of

case managers, rather than general project management.

In the reorganization, JCDS reduced plaintiff's supervisory duties from 14 to 5 case managers and reduced plaintiff's salary grade (which reflects pay and promotion potential) from 15 to 13. Plaintiff's actual pay, however, did not change. JCDS similarly reduced Achelpohl's salary grade from 14 to 13 although his actual salary also did not change. According to defendants' standards, the change of plaintiff's responsibilities and salary grade was not a demotion. In this reorganization, a total of 17 employees, including plaintiff, received lower salary grades. *See* Affidavit of Lisa York ¶ 4, attached as Exhibit 28 to *Appendix of Exhibits In Support Of Defendant's Motion For Summary Judgment* (Doc. # 40) filed April 26, 1999. Five of the 17 employees were under 40 years of age. *Id.* One female employee under 40 and two male employees were promoted in the reorganization.

During the 1996 reorganization, based on the new state regulations for case manager qualifications, JCDS also reviewed the job content for case managers. As a result, JCDS eliminated the masters degree requirement for case managers and changed the salary grade from 13 to 11.

*1997 Reorganization*

In March 1997, JCDS started to restructure the community service provider segment of the agency. The 1997 reorganization did not directly impact plaintiff. She claims, however, that the reorganization adversely treated older female employees while allowing younger female employees to advance.[5] A total of 13 employees received new positions in the 1997 reorganization—11 females and two males. *See* Affidavit of Lisa York ¶ [5]. Six of the 11

---

5. Plaintiff also argues that defendants used the July 1997 reorganization to "cover-up and correct prior wrongs." Plaintiff's SOF ¶ 126. The only evidence cited by plaintiff is hearsay. *See* plaintiff's SOF ¶ 126; plaintiff's Depo. at 106–08 (Brenda Robertson told Smith that Maury, Robertson's supervisor, had told Rob-

ertson "basically she got the job because she was over 40, and they needed women in that position"). Moreover, plaintiff's claim directly conflicts with her contention that defendants adversely treated older female employees in the reorganization. *See* plaintiff's SOF ¶ 126.

female employees were under 40 years of age. *See id.* All but two employees, both females under the age of 40, received their first choices of new positions.

*Age–Related Comments / Conduct* [6]

In 1987, Bob Richmond, a 60 year old man, held the position of Administrative Director. Elmore told Tim Arnold, who was under 40 years old, that he would do well in Richmond's position. Each year thereafter, Elmore required Richmond to do inventory for the entire building on his hands and knees to look for numbers. Elmore told plaintiff and other employees to document problems with financials for which Richmond was responsible. Elmore finally fired Richmond and hired Arnold.

Dennis Tucker, a member of management, told Shannon Fitzgerald that he liked "young minds you could train." In her deposition, plaintiff did not recall that Tucker or Elmore made any age-related comments to plaintiff that she found discriminatory.[7] *See* Plaintiff's depo. at 143.

B. *Exhaustion Of Administrative Remedies—Hostile Work Environment And Retaliation Claims* [8]

Filing a charge with the EEOC is a prerequisite to suit under the ADEA. *See* 29 U.S.C. § 626(d) ("No civil action may be commenced by an individual under this section until 60 days after a charge" has been filed with EEOC). Exhaustion is not mere etiquette; rather, it is a jurisdictional prerequisite. *See Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir.1996) (discussing Title VII's similar provisions). In Kansas, because the state has statutorily prohibited age discrimination, the ADEA requires that plaintiff file her EEOC charge within 300 days of the alleged discrimination. *See* 29 U.S.C. §§ 626(d)(2), 633(b). The exhaustion requirement serves two purposes: to give notice of the alleged violation to the charged party and to give the EEOC an opportunity to conciliate the claim. *See Ingels v. Thiokol Corp.,* 42 F.3d 616, 625 (10th Cir.1994) (citations omitted). "Allowing a complaint to encompass allegations outside the ambit of the predicate charge would circumvent the administrative agency's investigatory and conciliatory role as well as deprive the charged party [of] notice of the charge." *Harrell v. Spangler, Inc.,* 957 F.Supp. 1215, 1219 (D.Kan.1997) (quoting *Jensen v. Board of County Comm'rs,* 636 F.Supp. 293, 298 (D.Kan.1986)).

To be included in a lawsuit under the ADEA, plaintiff's allegations must be "reasonably related" to the allegations listed in the administrative charge. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th

6. Plaintiff claims that Elmore was "quite interested in hiring and promoting white males in their 30's and 40's." Letter from Lynne Daggett West to plaintiff dated November 17, 1996; plaintiff's SOF ¶ 56. Plaintiff enclosed the West letter as part of her EEOC file but she has failed to submit an affidavit or deposition testimony of West. The Court must exclude the West letter as hearsay. Similarly, the Court will exclude the letters of Ann Tams, Karen Frommer and Margie Waterman included in plaintiff's EEOC file. *See id.* ¶ 55.

Plaintiff also claims that between 1994 and 1998, defendants created positions for certain male employees and/or younger female employees and/or moved them into positions without posting the openings. *See* plaintiff's SOF ¶ 49. Plaintiff fails to specify the ages of the employees who allegedly received preferential treatment. Moreover, in her deposition, plaintiff concedes that she did not have first-hand knowledge of the circumstances surrounding the promotion of these individuals. Therefore the Court cannot consider these facts as evidence of age-based discrimination.

7. Plaintiff argues that Elmore used the phrase "can't teach a dog new tricks." Plaintiff refers to Margie Waterman's notes contained in plaintiff's EEOC file. The notes actually state "Can you teach a dog new tricks." The Court will exclude the comment as inadmissible hearsay because the Waterman notes are not part of a sworn statement or declaration.

8. Defendants argue that plaintiff's KADEA claims are barred because she failed to exhaust her administrative remedies. The Court finds that plaintiff's KADEA claims are barred by the parties' settlement agreement. Even if the Court were to consider plaintiff's KADEA claims, it would dismiss them for the same reasons discussed below with respect to the ADEA claims.

Cir.1997) (Title VII) (citation omitted). "[C]onsideration of complaints not expressly included in an EEOC charge is appropriate where the conduct alleged would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made." *Martin v. Nannie & The Newborns, Inc.,* 3 F.3d 1410, 1416 n. 7 (10th Cir.1993).

■ Defendants contend that plaintiff's claims for hostile work environment based on age and retaliation under the ADEA are barred because she did not include them within her EEOC charge. In her EEOC charge, plaintiff alleged a pattern of discrimination against women over 40 through a series of reorganizations. *See* Charge of Discrimination, Attached as Exhibit 2 to Defendants' Appendix (Doc. # 40) filed April 26, 1998. The charge does not mention a hostile work environment or retaliation based on complaints of age discrimination. Moreover, such claims would not fall within the scope of a reasonable investigation of the charges of discrimination related to the reorganizations at JCDS. *See Aramburu,* 112 F.3d at 1409–10 (hostile work environment claim not reasonably related to wrongful discharge claim contained in EEOC charge); *Seymore v. Shawver & Sons, Inc.,* 111 F.3d 794, 799–800 (10th Cir.) (retaliatory discharge claim ordinarily not reasonably related to discrimination claims contained in charge if retaliatory acts occurred prior to filing of charge), *cert. denied,* 522 U.S. 935, 118 S.Ct. 342, 139 L.Ed.2d 266 (1997); *Cheek v. Western & Southern Life Ins. Co.,* 31 F.3d 497, 503 (7th Cir.1994) ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). In addition, plaintiff's claims for hostile work environment and retaliation arose before she filed her EEOC charge. Accordingly, she should have included them in the charge. *See Seymore,* 111 F.3d at 799–800. Plaintiff has failed to exhaust administrative remedies with respect to her hostile work environment and retaliation claims.

Plaintiff argues that the Court should look beyond the EEOC charge to the supporting documents and intake questionnaire she submitted to the EEOC. Although the Court need not decide the question, it doubts that such a broad view of EEOC allegations is appropriate. The Tenth Circuit recently stated:

> [T]he formal charge is the key document in getting the Title VII [and ADEA] process rolling. By statute and regulation, it must be in writing and signed under oath or affirmation, *see* 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.9, and it must describe the practices complained of, *see id.* § 1601.12(b). It therefore is the primary, and usually the only, place to which courts look to determine whether a plaintiff timely and properly exhausted her claims before the EEOC. Because it is the only document that must be sent to the charged party, it is the only document that can satisfy the notice requirement.

*Welsh v. City of Shawnee,* 182 F.3d 934, 1999 WL 345597, at *5 (10th Cir. June 1, 1999). In *Welsh,* the Tenth Circuit noted that two other circuits have considered documents submitted to the EEOC, other than the charge, in determining whether claims have been adequately presented to the EEOC. *See id.* First, the Seventh Circuit allows courts to consider allegations outside the body of the charge "when it is clear that the charging party intended the agency to investigate the allegations." *Id.* (quoting *Cheek,* 31 F.3d at 502). Second, the Eighth Circuit allows courts to consider extraneous documents if the EEOC negligently handled the claim. *See Welsh,* 182 F.3d 934, 1999 WL 345597, at *5 (citing *Diez v. Minnesota Mining and Mfg. Co.,* 88 F.3d 672, 677 (8th Cir.1996)). "Both of these situations require a plaintiff to demonstrate that she intended that the EEOC investigate the allegations not included in the formal charge." *Welsh,* 182 F.3d 934, 1999 WL 345597, at *5. Plaintiff has failed to present any evidence on this point. Based on the charge signed by plaintiff, no reasonable jury could find that

she intended that the EEOC investigate her allegations of hostile work environment and retaliation based on prior complaints of age discrimination.

Even if the Court allowed plaintiff to incorporate her intake questionnaire and documents submitted to the EEOC into the charge of discrimination, however, it would reach the same result. On the questionnaire, plaintiff alleges that the harm she experienced was a demotion caused by a series of reorganizations. *See* Exhibit H to plaintiff's supplemental appendix (Doc. # 48) filed May 26, 1999. Plaintiff does not assert any claims of hostile work environment or retaliation on the questionnaire. At most, the entire EEOC file includes one or two vague references to a hostile work environment claim based on age, *see, e.g.*, Margie Waterman Notes (Elmore asked "can you teach a dog new tricks"), and no references to a retaliation claim based on plaintiff's prior complaints of age discrimination. Moreover, plaintiff has not produced any evidence that she intended an EEOC investigation of these claims, that the EEOC was at fault for failing to include these claims in the charge, or that she understood the charge to include these claims. Therefore the Court finds that plaintiff's allegations concerning a hostile work environment based on age and retaliation based on prior complaints of age discrimination are not reasonably related to the allegations made in her administrative charge. *See Welsh*, 182 F.3d 934, 1999 WL 345597, at *6.

For these reasons, plaintiff's ADEA claims based on hostile work environment and retaliation are barred. The Court sustains defendants' motion for summary judgment on these claims.

## C. *Disparate Treatment Claim*

■ The ADEA bans discrimination against employees based on age, but limits the protected class to workers who are 40 or more years of age. *See Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir.1996); 29 U.S.C. § 621 et seq. To prevail on an ADEA claim, plaintiff must establish that age was a determining factor in the employer's challenged decision. *See Greene*, 98 F.3d at 557 (citing *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988)). Plaintiff need not show that age was the sole reason for her demotion, but she must show that age "made the difference" in the JCDS decision. *Greene*, 98 F.3d at 557 (quoting *EEOC v. Sperry Corp.*, 852 F.2d 503, 507 (10th Cir.1988)). She may meet this burden by direct evidence that age was a determining factor in defendants' failure to select her or by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Here, plaintiff relies on the latter approach.

Plaintiff concedes that her discrimination claims based on defendants' conduct since 1991 are based on "age and sex combined." Defendants' SOF ¶ 62 ("It's not just age discrimination or just sex discrimination. It's age and sex combined."). No district court has explicitly adopted an age-plus-gender theory of liability under the ADEA. *See Luce v. Dalton*, 166 F.R.D. 457, 460–61 (S.D.Cal.1996); *Kelly v. Drexel Univ.*, 907 F.Supp. 864, 875 n. 8 (E.D.Pa.1995), *aff'd*, 94 F.3d 102 (3d Cir.1996); *see also Bernofsky v. Tulane Univ. Med. Sch.*, 962 F.Supp. 895, 900 n. 3 (E.D.La.1997) (rejecting ADEA claim of age-plus-race discrimination). *But cf. Good v. U.S. West Communications, Inc.*, No. 93–302–FR, 1995 WL 67672 (D.Or. Feb.16, 1995) (recognizing combined claim of age and sex discrimination without specifying whether claim is cognizable under Title VII or ADEA). Even if such a claim is cognizable under the ADEA, plaintiff has failed to present evidence sufficient for a reasonable jury to find in her favor.

■ Plaintiff's age-plus-gender claim is based on defendants' alleged discrimination against a subset of the protected group of older workers, *i.e.* older women. To prevail on her claim, plaintiff must show differential treatment between her-

self and younger women. *Cf. Coleman v. B–G Maintenance Management of Colorado, Inc.*, 108 F.3d 1199 (10th Cir.1997) (in gender-plus-marital status claim, female plaintiff must show that male workers with same marital status were treated differently). Plaintiff cannot compare herself to younger men because the ADEA prohibits employers from treating older women differently than younger women, but it does not protect from differential treatment based solely on gender. *Cf. id.* at 1204 ("Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone."). Plaintiff has failed to present any evidence that JCDS treated comparable younger women more favorably than it treated her. In fact, plaintiff has failed to include the ages of any comparable younger women. Accordingly, plaintiff cannot establish a prima facie case of age-plus-gender discrimination.

■ Even if the Court were to evaluate plaintiff's claim as an ordinary age discrimination claim, it would reach the same result. To establish an age discrimination claim, plaintiff must first establish a prima facie case that (1) she was within the protected class; (2) she was doing satisfactory work; (3) she was demoted; and (4) her previous position was not eliminated, *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir.2000), or she was treated less favorably than younger employees, *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1454 (10th Cir.1994). *See Gonzagowski v. Widnall*, 115 F.3d 744, 749 (10th Cir.1997). Here, plaintiff has not shown either that her previous position was not eliminated or that she was treated less favorably than younger employees. As explained above, plaintiff has failed to show the ages of the employees who allegedly received preferential treatment. Therefore plaintiff cannot establish the fourth element of her prima facie case.

Even if plaintiff could establish a prima facie case, she has not presented sufficient evidence to show that defendants' offered reasons for her "demotions" were pretexts for age discrimination. Establishment of a prima facie case creates a presumption of unlawful discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). After plaintiff has established a prima facie case, the burden shifts to defendant to produce evidence that the adverse employment action was taken for a legitimate nondiscriminatory reason. *Greene*, 98 F.3d at 558. The Court finds that JCDS has offered legitimate nondiscriminatory reasons for its decisions to "demote" plaintiff in the 1993, 1995 and 1996 reorganizations, *i.e.* in 1993, Sullivan and Arnold were better qualified, plaintiff did not apply for the Agency Team Leader position, and plaintiff was well qualified for the Professional Services Team Leader position; in 1995, Achelpohl was being underutilized and plaintiff was not providing adequate leadership; and in 1996, plaintiff was needed to fill one of three recently created Case Management Coordinator positions.

After defendants meet their burden, the presumption of discrimination drops from the case and plaintiff must establish by a preponderance of the evidence "that the proffered reason was not the true reason for the employment decision." *Id.* Plaintiff may show pretext by establishing either that a discriminatory reason more likely motivated defendants or that the employer's explanations are unworthy of credence. *Rea*, 29 F.3d at 1455. Plaintiff relies on three theories to meet this burden—(1) her qualifications and performance did not warrant a demotion, (2) statistical evidence that older employees were treated less favorably than younger employees and (3) age-related comments by her supervisors.

### 1. Qualifications/Performance

■ Plaintiff claims that her qualifications for various positions and her past performance suggest that defendants' offered reasons for selecting other individuals are unworthy of credence. At best, plaintiff could prove at trial that she was "as qualified" as Sullivan (who received the

Community Team Leader position in 1993), Arnold (who received the Support Services Team Leader position in 1993), Rinkel (who received the Agency Team Leader position in 1993), and Achelpohl (who received supervisory duties over three professional staff members in 1995). *See* plaintiff's SOF ¶ 63. Of course, an "employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine,* 450 U.S. at 259, 101 S.Ct. 1089; *see Rea,* 29 F.3d at 1457 ("Evidence that a plaintiff is as qualified as another employee chosen over him or her does not raise a factual issue as to pretext."). Plaintiff must show "more than a denial of promotion as a result of a dispute over qualifications" to establish pretext. *Bennun v. Rutgers State Univ.,* 941 F.2d 154, 170 (3rd Cir.1991), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 956, 117 L.Ed.2d 124 (1992) (quoting *Molthan v. Temple Univ.,* 778 F.2d 955, 962 (3rd Cir.1985)). JCDS has offered specific reasons for the "promotion" of each of these individuals.[9] JCDS has also advanced reasons why it assigned plaintiff to the Professional Services Team Leader position in 1993, why it reduced plaintiff's supervisory responsibilities in 1995, and why it assigned plaintiff to a Case Management Coordinator position in 1996.[10] Plaintiff has not offered evidence for a reasonable jury to find that JCDS did not honestly believe in these reasons. *See Fischbach v. District of Co-lumbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996); *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.) ("It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason."), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Most importantly, plaintiff has not offered any evidence of the ages of Sullivan, Rinkel and Achelpohl and only refers to Arnold as under 40 *in 1987.* Absent evidence of the ages of the individuals at the time they received the positions, no reasonable jury could conclude that defendants' choice of these individuals over plaintiff was a pretext for age discrimination.

### 2. Statistical Evidence

 Plaintiff also argues that statistical evidence supports her claim of pretext. Data showing a pattern of conduct towards a protected class must show a significant disparity in defendants' treatment of the protected class and must eliminate non-discriminatory reasons for this treatment. *See Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 746 (10th Cir.1991); *Rea,* 29 F.3d at 1456. Here, plaintiff has shown that 12 of the 17 employees who received lower salary grades in the 1996 reorganization were over 40 years old.[11]

Plaintiff has utterly failed to show a statistical disparity sufficient for a reason-

---

**9.** For the Agency Team Leader position, plaintiff alleges that she did not apply for the position because defendants created it for Rinkel. Plaintiff has not offered any evidence, however, that defendants created the position because of Rinkel's age. Indeed Rinkel's age is not included in the record.

**10.** Plaintiff's arguments regarding the role of Hay Management in the reorganization process, *see* plaintiff's SOF ¶¶ 64–69, and the necessity of the reorganization, *see id.* ¶¶ 77, 108–110, fail to show that defendants' reasons were pretextual. At most, plaintiff has shown that defendants reorganized and reclassified positions more than suggested by Hay Management or required by law. Other than her own conclusory statements, however, plaintiff has failed to show that JCDS did not honestly believe that the reorganizations were necessary.

**11.** Plaintiff also notes that two other female employees over the age of 40 were demoted in the 1993 reorganization. Plaintiff fails to identify, however, the total number of employees demoted in the agency. Therefore the Court finds that such evidence is not probative to establish a pattern of age discrimination. Likewise, plaintiff's allegation that in 1987 Elmore fired Richmond, a 60 year old man, is not probative of a "pattern" of age discrimination. *See* plaintiff's SOF ¶ 31. Plaintiff's allegation regarding Richmond also is refuted by her claim that Richmond received preferential treatment because he was a man. *See id.* ¶¶ 12–14.

able jury to find that defendants' offered reasons for not promoting her are a pretext for age-based discrimination. First, plaintiff has not presented evidence of a significant disparity in JCDS treatment of employees. Plaintiff has offered only the fact that 71% (or 12 of 17) of the employees who were demoted were over 40 years old. A group of 17 is too small to provide reliable statistical results. *See Fallis*, 944 F.2d at 746 (small sample size of 9 carries little or no probative force to show discrimination). Plaintiff's statistical evidence paints a very limited picture. For example, plaintiff does not provide evidence regarding the total number of employees at JCDS over the age of 40 and the number of employees under the age of 40. Absent such evidence, a comparison of a limited subgroup has no probative value. Moreover, other than her conclusory statements, *see, e.g.*, plaintiff's SOF ¶ 111 (Elmore was biased against older women); *id.* ¶ 42 (Elmore prepared negative case notes regarding older female employees), plaintiff has failed to offer specific comparative evidence that younger employees were treated differently than older employees. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir.2000). Finally, plaintiff's "statistical data" fails to eliminate non-discriminatory reasons for JCDS actions. *See Rea*, 29 F.3d at 1456. In sum, plaintiff's statistical evidence is insufficient to establish either that age more likely motivated defendants or that their explanations of the various job changes are unworthy of credence.

### 3. Statements Reflecting Discriminatory Intent

■ Plaintiff also apparently argues that two comments by Elmore and Tucker

constitute sufficient circumstantial evidence that a discriminatory reason more likely motivated JCDS or that its proffered reason is pretextual. Tucker told Shannon Fitzgerald that he liked "young minds you could train" and Elmore asked Margie Waterman "can you teach a dog new tricks." [12] Even if the Court considers the hearsay statement of Tucker, the Court finds that the statements viewed together are insufficient to raise a triable issue of pretext.

■ In order for remarks to be sufficiently probative of discriminatory intent, plaintiff must demonstrate a nexus between the alleged discriminatory statements and defendants' adverse decisions. *See Rea*, 29 F.3d at 1457; *see also Cone*, 14 F.3d at 531 (isolated comments, unrelated to challenged action, insufficient to show discriminatory animus). The comments have no demonstrated nexus with JCDS decisions regarding plaintiff because neither comment was directed at plaintiff. Without such a nexus, the statements are best viewed as "stray remarks" that are not probative. Although Tucker referred to "young minds" and Elmore referred to "new tricks," such comments are too ambiguous for a reasonable jury to conclude that defendants' reasons for demoting plaintiff are pretextual. Two remarks regarding "young minds" and "new tricks" over a six-year period are too vague and abstract to support a claim for age discrimination. *See id.*

In sum, plaintiff has not shown that a discriminatory reason more likely motivated defendants or that their explanations are unworthy of credence. Accordingly, defendants' motion for summary judgment is sustained on plaintiff's disparate treatment claim based on age. [13]

12. Plaintiff contends that Tucker and Arnold intentionally planned to change plaintiff's supervisory responsibilities in the reorganization. Plaintiff references an e-mail message dated February 21, 1996 from Tucker to another employee which refers to communication problems between Tucker and plaintiff and an "alternative plan" to deal with the problems. Plaintiff has not presented any

evidence that the alternative plan was based on age or that it included her demotion.

13. The Court need not address defendants' alternative argument that plaintiff's claims based on the 1993 and 1995 reorganizations are barred because she failed to timely file an administrative complaint.

### D. Hostile Work Environment Claim

In addition to the procedural bar to plaintiff's hostile work environment claim, the Court finds that the claim lacks substantive merit. The Tenth Circuit has not addressed whether a hostile work environment claim is cognizable under the ADEA. *See Holmes v. Regents of the Univ. of Colo.*, 176 F.3d 488, 1999 WL 285826, at *7 n. 6 (10th Cir. May 7, 1999). In *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830 (6th Cir.1996), the Sixth Circuit, recognizing such a claim, stated that a plaintiff must prove the following elements to establish a prima facie claim of hostile-environment under the ADEA:

1. Plaintiff is 40 years old or older;

2. Plaintiff was subjected to harassment, either through words or actions, based on age;

3. The harassment had the effect of unreasonably interfering with plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment; and

4. There exists some basis for liability on the part of the employer.

*Id.* at 834–35.

■ Assuming the Tenth Circuit would recognize a hostile work environment claim under the ADEA, plaintiff meets the first element because she is over 40 years old. But plaintiff has failed to point to evidence showing the second element—that the alleged harassment was based upon her age. Plaintiff cannot recall that Tucker or Elmore made any age-related comments to her that she found discriminatory. Plaintiff points to two comments, directed at others, which have age connotations—Tucker's comment to Fitzgerald that he liked "young minds you could

train" and Elmore's comment to Waterman asking "can you teach a dog new tricks." Neither comment was directed at plaintiff and she apparently was not aware of the comments at the time they were made. Therefore they are insufficient to show that *plaintiff* was subjected to harassment based on her age. The other alleged "harassing" incidents do not suggest a nexus to plaintiff's age.[14] Accordingly, plaintiff must present additional evidence to show differential treatment of older and younger workers, to establish some animus to older workers, or to link the non-age and age incidents. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (Title VII); *Doe v. City of Belleville, Ill.*, 119 F.3d 563, 575 (7th Cir.1997) (Title VII), *vacated on other grounds*, 523 U.S. 1001, 118 S.Ct. 1183, 140 L.Ed.2d 313 (1998). Plaintiff has presented no evidence, apart from her own conclusions, that any hostility in her workplace was related to age. *See Crawford*, 96 F.3d at 835 (two comments indicative of age-based animus not sufficient to create issue of fact for jury as to whether hostility was based on age). General harassment or harsh treatment, if not age-related, is not actionable.

Plaintiff also has not shown that she meets the third element of a prima facie case. Hostile work environment harassment occurs when unwelcome age-related conduct "unreasonably interfer[es] with an individual's work performance or creat[es] an intimidating, hostile, or offensive working environment." *Meritor Sav. Bank, F.S.B. v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). To withstand defendants' summary judgment motion,

---

14. For example, plaintiff alleges that Elmore made an unknown derogatory comment about plaintiff to another employee, plaintiff's SOF ¶ 34, that Tucker and Arnold developed an "alternative plan" to deal with the communication problems between plaintiff and Tucker, *id.* ¶ 35, that between 1992 and 1996, Arnold told his staff not to tell plaintiff anything, *id.* ¶ 37, that Elmore deleted plaintiff's e-mail messages without reading them, *id.* ¶ 39, that

between 1993 and 1996, her office location was changed more times than any other employee, *id.* ¶ 51, that Elmore did not ask for plaintiff's input in the 1993 reorganization, *id.* ¶ 70, that Elmore targeted potential managers, *id.* ¶ 74, that Elmore advised plaintiff that he created and maintained derogatory files on employees, *id.* ¶ 50, and that plaintiff and other employees were not allowed to bid for positions in the 1993 reorganization, *id.* ¶ 79.

"plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998) (quoting *Davis v. United States Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir.1998)), *cert. denied,* 526 U.S. 1039, 119 S.Ct. 1334, 143 L.Ed.2d 498 (1999).

In determining whether the alleged conduct was sufficiently severe or pervasive to constitute actionable age harassment, the Court considers the totality of the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (quoting *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). The Court also considers the context in which the conduct occurred. *See Smith v. Norwest Financial Acceptance, Inc.,* 129 F.3d 1408, 1413 (10th Cir.1997). These factors are evaluated from both an objective and a subjective perspective.[15] *See id.*

Plaintiff has pointed to only two age-oriented comments over a six-year period. These two comments, which did not involve plaintiff, are not sufficiently severe or pervasive to unreasonably interfere with plaintiff's work performance. Notably absent from plaintiff's allegations are any derogatory comments or ridicule of an explicitly age-related nature. For the most part, plaintiff has pointed to isolated non-age-related incidents. Although these events may have been unpleasant, plaintiff has not shown that they were severe or pervasive.

Plaintiff has failed to set forth a prima facie case of a hostile work environment under the ADEA, and defendants are entitled to summary judgment on this claim.

## E. Retaliation

▆ As explained above, plaintiff's retaliation claim is barred because she failed to include it in her EEOC charge. Plaintiff also has failed to establish a prima facie case of retaliation. In analyzing retaliation claims, the Court applies the *McDonnell Douglas* shifting burden of proof discussed above. *See Conner v. Schnuck Mkts., Inc.,* 121 F.3d 1390, 1394 (10th Cir.1997). The ADEA prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice" by the ADEA. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, plaintiff must show (1) that she engaged in protected opposition to ADEA discrimination; (2) that she was disadvantaged by an action of her employer subsequent to or contemporaneously with such opposition; and (3) that a causal connection exists between the protected activity and the adverse employment action.[16] *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir.1993).

▆ Plaintiff contends that she engaged in "protected activity" when she went to an EAP counselor in 1992 or 1993 and questioned "the legalities of the reorganization" at JCDS.[17] Plaintiff alleges that Elmore gave her a lower performance appraisal because of her complaint. Plain-

---

**15.** For purposes of the motion, the Court assumes that plaintiff subjectively perceived her work environment as hostile.

**16.** The Court applies the same general standards of proof to ADEA retaliation claims as it does to Title VII retaliation claims. *See Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 634 (10th Cir.1988).

**17.** Plaintiff also claims that in 1987, she orally complained to Elmore that comparable male employees had less responsibility but were paid at a higher rate or had higher (or the same) grade levels as plaintiff. As explained above, the parties settled plaintiff's claims based on gender. Therefore the Court need not consider this allegation.

tiff has not presented evidence, however, that her complaint was based on age discrimination. Plaintiff's reference to the legalities of the reorganization and harassment generally are insufficient. Therefore plaintiff has failed to show that she engaged in protected activity under the ADEA. More importantly, plaintiff has failed to present any evidence of a casual connection between her alleged protected activity and any adverse employment action. She has failed to show that Elmore or any JCDS employee knew of her complaint to her counselor. In these circumstances, plaintiff's retaliation claim fails as a matter of law.

## II. Plaintiff's Motion To Amend

Plaintiff seeks leave to add a claim for retaliation under Title VII and the ADEA. On October 15, 1996, plaintiff filed her original EEOC charge. On April 2, 1998, plaintiff filed the instant action. On March 11, 1999, plaintiff filed an EEOC charge of discrimination, asserting that from October 15, 1996 through November 12, 1998, defendants retaliated against her based on the filing of this suit and the original EEOC charge. On January 21, 2000, the EEOC advised plaintiff that it had decided not to investigate further her ADEA retaliation claim. On March 15, 2000, plaintiff filed her motion to amend.

Plaintiff's motion to amend is grossly out of time. Based on plaintiff's prior complaint and the pretrial order, defendants have fully briefed their summary judgment motion. As explained above, the Court grants that motion on plaintiff's remaining ADEA claims. Defendants would be extremely prejudiced if they had to file yet another summary judgment motion. Moreover, discovery has been complete for nearly one year and defendants should not be required to begin discovery anew. *See Pretrial Order* (Doc. # 36) filed April 12, 1999 at 28. Finally, the pretrial order does not assert a retaliation claim or note a possible need to amend at a later date. *See id.* at 24 (no amendments to pleadings). In these circumstances, the Court overrules plaintiff's motion as untimely

and prejudicial to defendants. *See Walters v. Monarch Life Ins. Co.,* 57 F.3d 899, 903 (10th Cir.1995) (district court did not abuse discretion by overruling motion to amend where defendant attempted to assert new claim one month before trial); *Las Vegas Ice and Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) (untimeliness alone is sufficient basis for denial of leave to amend; prejudice to opposing party need not also be shown); *First City Bank v. Air Capitol Aircraft Sales, Inc.,* 820 F.2d 1127, 1132–33 (10th Cir.1987) (same).

Plaintiff argues that she could not have filed the proposed amendment before January 21, 2000 because the EEOC did not issue her a right-to-sue letter until that date. Plaintiff, however, ignores the fact that she could have sought leave to assert a retaliation claim without filing any charge with the EEOC. *See Ingels,* 42 F.3d at 625 ("an act committed by an employer in retaliation for the filing of an EEOC complaint is reasonably related to that complaint, obviating the need for a second EEOC complaint"). Since November 12, 1998, the date of the last retaliatory action alleged in plaintiff's EEOC charge, plaintiff could have sought leave to amend. Plaintiff elected to treat her retaliation claim as a matter separate and distinct from her claims in this case. The Court likewise will treat the claims as separate. *See Mosley v. Pena,* 100 F.3d 1515, 1519 (10th Cir.1996). If plaintiff desires to file the proposed retaliation claim, she may file a separate lawsuit.

**IT IS THEREFORE ORDERED** that defendants' *Motion For Summary Judgment* Doc. # 38) filed April 26, 1999, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that *Plaintiff's Motion To File First Amended Complaint And Suggestions in Support Thereof* (Doc. # 104) filed March 15, 2000, be and hereby is **OVERRULED.**