William KIRKENDALL, individually and as class representative of others similarly situated including past, present and future employees of defendant United Parcel Services, Inc., Plaintiff,

v.

UNITED PARCEL SERVICE, INC., Defendant.

No. 96–CV–6375L.

United States District Court, W.D. New York.

May 20, 1997.

Leland W. Hutchinson, David A. Rammelt, Freeman & Peters, Chicago, IL, Luciano L. Lama, Ithaca, NY, for plaintiff.

Edward Ryan Conan, Robert A. LaBerge, Bond, Schoeneck & King, Syracuse, NY, for defendant.

*DECISION AND ORDER*

LARIMER, Chief Judge.

This action is brought by plaintiff, William Kirkendall ("Kirkendall"), individually and as class representative of other similarly situated individuals, including past, present, and future employees, (collectively "plaintiffs"), of defendant United Parcel Service ("UPS"),

pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*

### FACTUAL BACKGROUND

The complaint alleges that, in 1994, UPS adopted a policy requiring employees to lift, carry, and deliver packages weighing up to 150 pounds. Prior to this time, the weight limit on all packages was 70 pounds. As a result of this policy, Kirkendall suffered a back injury and the remaining plaintiffs suffered back and other injuries, causing them to become disabled. Plaintiffs notified UPS of their disabilities, and UPS refused to accommodate them.

In this action, plaintiffs maintain that they are qualified individuals with disabilities under the ADA and are able to perform the essential functions of their jobs with reasonable accommodations.

Pending before the Court is defendant's motion to dismiss for lack of jurisdiction or for summary judgment.

## I. UPS'S MOTION TO DISMISS FOR LACK OF JURISDICTION

■ UPS moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss Kirkendall's complaint for lack of subject-matter jurisdiction. UPS maintains that Kirkendall's ADA claim must be submitted to the grievance/arbitration procedure outlined in the Collective Bargaining Agreement ("CBA") in effect between plaintiffs' union and UPS. Kirkendall argues that he is not required to submit to the CBA's grievance/arbitration procedure and that he may sue in the first instance here in federal court on his ADA claim.

The Court begins its analysis of this dispute with the unanimous Supreme Court decision in *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). There, the Court held that an individual may commence an action in federal court under Title VII even though he already

had submitted his discrimination claim to arbitration, pursuant to a collective-bargaining agreement, and the claim had been decided adversely to him.[1] According to the Court:

> In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums.

*Id.* at 49–50, 94 S.Ct. at 1020.

The Court reasoned that:

> [T]here can be no prospective waiver of an employee's rights under Title VII. It is true, of course, that a union may waive certain statutory rights related to collective activity, such as the right to strike. These rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective-bargaining agent to obtain economic benefits for union members. Title VII, on the other hand, stands on plainly different ground; it concerns not majoritarian processes, but an individual's right to equal employment opportunities. Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices. Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII. In these circumstances, an employee's rights under Title VII are not susceptible of prospective waiver.

---

1. Implicitly, this holding also applies to a worker, such as Kirkendall, who has chosen not to pursue the grievance/arbitration procedure. *Varner v. National Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996). The necessary extension of *Gardner–Denver* is that an employee may exercise his rights in either or both forums. *Hill v. American Nat'l Can Co./Foster Forbes Glass Div.,* 952 F.Supp. 398, 407 (N.D.Tex.).

*Id.* at 51–52, 94 S.Ct. at 1021–22 (citations omitted).

The Court made it clear that both contractual and statutory rights "have legally independent origins and are equally available to the aggrieved employee." *Id.* at 52, 94 S.Ct. at 1022. The Court concluded that "the federal policy favoring arbitration of labor disputes and the federal policy against discriminatory employment practices can best be accommodated by permitting an employee to pursue fully both his remedy under the grievance-arbitration clause of a collective-bargaining agreement and his cause of action under Title VII." *Id.* at 59–60, 94 S.Ct. at 1025.

In two subsequent cases, *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (Fair Labor Standards Act claim) and *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) (§ 1983 claim), the Supreme Court adhered to the holding and reasoning of *Gardner–Denver.*

Several years later, the Supreme Court took a markedly different approach when it addressed the enforceability of an arbitration clause contained in a securities registration application that an employee was required to sign as a condition of his employment. In *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 23, 111 S.Ct. 1647, 1650–51, 114 L.Ed.2d 26 (1991), the Court held that an ADEA claim must be submitted to arbitration pursuant to the arbitration agreement in the securities registration application. The Court reasoned that " '[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum.' " *Id.* at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). The Court recognized that not all statutory claims may be appropriate for arbitration. *Id.* However, " '[h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory

rights at issue.' " *Id.* at 26, 111 S.Ct. at 1652 (quoting *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. at 3354–55).

In reaching its decision, the Court did not overrule *Gardner–Denver* or its progeny, but merely distinguished them. *Id.* at 33–35, 111 S.Ct. at 1655–57. In the previous cases, the Court had emphasized the difference between contractual rights under a collective-bargaining agreement and individual statutory rights, the limited authority and power of arbitrators, and the potential disparity in interests between a union engaged in collective representation and an individual employee. *Id.* at 34–35, 111 S.Ct. at 1656–57. In *Gilmer,* the Court emphasized that plaintiff had entered into an individual employment agreement to arbitrate statutory claims outside the collective-bargaining context.

I find that with respect to collective-bargaining agreements, *Gardner–Denver* is still controlling and represents the law of this Circuit. *See Tran v. Tran,* 54 F.3d 115, 117 (2d Cir.1995) (Second Circuit refused to enforce arbitration provision in a collective-bargaining agreement for an employee's Fair Labor Standards Act claim.), *cert. denied,* —— U.S. ——, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996); *Humphrey v. Council of Jewish Federations,* 901 F.Supp. 703, 709 (S.D.N.Y.1995). The holding in *Gilmer* applies only to individual contracts negotiated by an employee. Therefore, while an individual is free to waive his rights to a judicial forum, a union, through its negotiations with the employer, may not. Several other courts, when faced with this precise issue, have reached the same conclusion. *See, e.g., Pryner v. Tractor Supply Co.,* 109 F.3d 354, 363–64 (7th Cir.1997); *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1478 (D.C.Cir. 1997); *Varner v. National Super Markets, Inc.,* 94 F.3d 1209, 1213 (8th Cir.1996); *DiPuccio v. United Parcel Serv., Inc.,* 890 F.Supp. 688, 692–93 (N.D.Ohio 1995); *Wilkinson v. New York Telephone Co.,* 1995 WL 87257, at *4 n. 5 (E.D.N.Y. Feb. 16, 1995), *aff'd,* 71 F.3d 405 (2d Cir.1995); *Tarrant v. United Parcel Serv., Inc.,* 1994 WL 30552, at *2–3 (N.D.Ill. Feb. 3, 1994).[2]

**2.** This Court recognizes that there is authority to     the contrary, namely *Austin v. Owens–Brockway*

Accordingly, Kirkendall need not pursue the grievance-arbitration procedures contained in the CBA with respect to his ADA claim. Therefore, this Court has jurisdiction, and defendant's motion to dismiss is denied.

## II. UPS'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment on the ground that Kirkendall is unable to prove either that he is disabled within the meaning of the ADA or that he can perform the essential functions of his position with or without reasonable accommodation.

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir.1994). Summary judgment is appropriate if the nonmovant fails to establish the existence of an element essential of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The ADA prohibits discrimination against "a qualified individual with a disability . . . in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

■ To establish a prima facie case of discrimination under the ADA, Kirkendall must prove that: (1) he is "disabled" within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of his job; and (3) he suffered adverse employment action because of his disability. *Wernick v. Federal Reserve Bank*, 91 F.3d 379, 383 (2d Cir.1996); *Kotlowski v. Eastman Kodak Co.*, 922 F.Supp. 790, 796 (W.D.N.Y. 1996).

To survive a summary judgment motion, an ADA plaintiff must meet the threshold burden of establishing that he is "disabled," as that term is defined under the statute. An individual is considered disabled, within the meaning of the ADA, if he: (1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such an impairment; or (3) has been regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C).

■ In the instant case, Kirkendall suffers from degenerative disk disease. Obviously, Kirkendall has a physical impairment. However, a physical impairment, standing alone, does not necessarily constitute a disability under the ADA. *Hazeldine v. Beverage Media, Ltd.*, 954 F.Supp. 697, 703 (S.D.N.Y.1997) (quoting *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)). In fact, a physical impairment "may affect an individual's life without becoming disabling." *Id.* at 703. Therefore, Kirkendall must demonstrate that his physical impairment "substantially limits" one or more "major life activities." This he has failed to do.

The ADA does not define "substantially limits" or "major life activities." However, the regulations promulgated by the EEOC are instructive. To be substantially limited under the ADA, an individual must be "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" as compared to the average person in the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). "Major life activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

The three factors to be considered when determining whether an impairment substan-

*Glass Container, Inc.*, 78 F.3d 875 (4th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996), which extended the holding of *Gilmer* to cover arbitration clauses in collective-bargaining agreements. However, this Court rejects the Fourth Circuit's extension of *Gilmer* as an improper interpretation of the law. Supreme Court jurisprudence dictates the conclusion that an agreement to arbitrate made in the collective-bargaining context does not waive any potential individual statutory remedies.

tially limits a major life activity are: (1) "[t]he nature and severity of the impairment"; (2) "[t]he duration or expected duration of the impairment"; and (3) "[t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

When an individual, such as Kirkendall, claims that the impairment limits him in the major life activity of working, he must prove that he is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). "[T]he impairment must substantially limit employment generally." *Byrne v. Board of Educ.,* 979 F.2d 560, 565 (7th Cir.1992); *Castro v. Local 1199,* 1997 WL 202171, *5 (S.D.N.Y. Apr. 23, 1997).

Further, when the major life activity at issue is the ability to work, the court may consider the following three additional factors in determining whether an individual is substantially limited: (1) "[t]he geographical area to which the individual has reasonable access"; (2) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs)"; and/or (3) "[t]he job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes)." 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(C).

In his affidavit, Kirkendall describes his disability as follows:

My disability is permanent and affects my ability to carry on normal life activities including as follows: I cannot play with my children in a normal fashion. I cannot lift my daughter from the floor, or play simple games with my young children like "horseback", "piggy-back" or tumbling, or "wrestling" on the floor. I can no longer engage in many of my favorite recreational activities including skiing, football, tennis, basketball, bowling. I can no longer normally engage in golf or fishing without special preparation and without taking special measures to protect my back. I cannot make any sudden movements of my back, especially twisting motions. I cannot sit without moving for more than three (3) hours at one time. . . .

My disability requires that I do special therapeutic exercise that consumes several hours of my time each week. I suffer permanent chronic pain that restricts virtually all of my life activities. Because of my disability, I am unable to entertain my wife as I used to, and my marital relations with my wife have been materially reduced.

William H. Kirkendall Affidavit at ¶¶ 111–12.

The medical evidence submitted to the Court indicates that although Kirkendall's impairment is permanent, it is only partial and relatively moderate. Letter Report of Paul M. DeLuca, M.D., dated September 11, 1995. The range of motion of Kirkendall's lower back is "slightly limited." Letter of David C.Y. Kung, M.D., dated August 9, 1995. According to Dr. Kung, Kirkendall's "problem is a weak back." *Id.* His discs are degenerated, although there is no disc herniation. *Id.* Dr. Kung concluded that Kirkendall should seek another type of job because repetitive bending and lifting were not suitable for his back. *Id.* Dr. DeLuca concurred in this conclusion: "I strongly recommend that Mr. Kirkendall change his occupation to one that he can perform within the limits of his disability. I would recommend that in his future occupation he should avoid all prolonged standing or sitting frequent bending or frequent light lifting and certainly no heavy lifting above 30 [pounds]." Letter Report of Paul M. DeLuca, M.D., dated September 11, 1995. In June 1996, Dr. Mauer opined that Kirkendall could return to activities that require lifting and carrying as long as the weight was limited to 30 pounds.

Letter of Mark W. Mauer, M.D., dated June 17, 1996. In the most recent medical evidence presented to the Court, Dr. Mauer indicated that Kirkendall is able to lift and handle 30 pound packages, maneuver up to 67 pound packages from desk and chair height to the floor, and maneuver packages up to 70 pounds from above the shoulders to the floor. Letter of Mark Mauer, M.D., December 1996. Further, Dr. Mauer stated that Kirkendall "could bend and stoop frequently, squat continuously, crawl and climb stairs continuously, crouch frequently, kneel and balance continuously." *Id.*

Based on the evidence before me, I must conclude that Kirkendall's physical impairment does not cause him to be substantially limited in any major life activity, including the ability to work. Kirkendall's primary limitations are his inability to lift items in excess of 30 pounds, to sit for periods longer than 3 hours at a time, and to engage in certain leisure activities.

Courts have held, as a matter of law, that a weight limitation such as Kirkendall's, particularly when compared to an average person's abilities, "does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity." *Williams v. Channel Master Satellite Sys., Inc.,* 101 F.3d 346, 349 (4th Cir.1996) (25 pound lifting limitation); *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1319 (8th Cir.1996) (25 pound lifting restriction). Kirkendall's inability to sit for more than 3 hours at a time also does not constitute a disability within the meaning of the ADA. *See Wernick v. Federal Reserve Bank of New York,* 1995 WL 598973, at *1, *3 (S.D.N.Y. Oct. 10, 1995) (Individual's medical restriction of "no prolonged sitting" did not render her disabled under the ADA, as it did not substantially limit any major life activity, including her ability to work.), *aff'd,* 91 F.3d 379 (2d Cir.1996). Courts also have recognized that the inability to engage in leisure activities and sports, which require a great deal of physical vigor, does not equate with

the inability to engage in normal everyday activities or job-related duties. *O'Dell v. Altec Indus., Inc.,* 1995 WL 611341, *4 (W.D.Mo. Oct. 16, 1995). I also find that plaintiff's restrictions, in combination, do not substantially limit him in any major life activity.

Further, Kirkendall has not produced any evidence that he is significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes. Kirkendall, who has an associates degree in Business Administration, has been disqualified only from the narrow range of jobs involving heavy lifting and prolonged sitting. *See Hutchinson v. United Parcel Serv., Inc.,* 883 F.Supp. 379, 396 (N.D.Iowa 1995). Kirkendall himself essentially admits this. In a letter, dated September 25, 1995, to Carol Schmaus, UPS Division Manager, Kirkendall states: "I am writing to let you know that my back condition, and permanent partial disability, have not left me incapable of performing jobs in a different capacity. Therefore, I would like to know what types of positions with UPS may be available that would accommodate my situation."

Additionally, Kirkendall has submitted no evidence of his vocational training, geographic area to which he has access, or the number and types of jobs demanding similar training from which he would be disqualified. Some courts have held that a plaintiff's failure to come forward with such evidence warrants granting summary judgment in favor of the defendant. *See, e.g., Bolton v. Scrivner, Inc.,* 36 F.3d 939, 944 (10th Cir.1994); *Kindle v. Mid–Central/Sysco Food Servs., Inc.,* 1996 WL 99766, at *7 (D.Kan. Feb. 2, 1996); *Howard v. Navistar Int'l Transp. Corp.,* 904 F.Supp. 922, 928–29 (E.D.Wis.1995), *aff'd,* 107 F.3d 13 (7th Cir.1997).

Because Kirkendall has failed to demonstrate that he is substantially limited in a major life activity and, therefore, disabled within the meaning of the ADA, summary judgment must be granted to the defendant.[3]

---

3. Because I find that Kirkendall is not disabled within the meaning of the ADA, it is unnecessary for me to consider whether he is able to perform the essential functions of his position either with or without reasonable accommodation.

Further, because Kirkendall's individual claim fails, perforce his class claims fail as well.

**112**

## CONCLUSION

This case is unfortunate. Kirkendall had a decent job with UPS—one which he is no longer able to perform. However, that does not mean that there has been a violation of the ADA. The ADA was not intended to be a job insurance policy. Clearly, Kirkendall has significant quarrels—some of which may be legitimate—with UPS and its current policies and practices. Nevertheless, they are not cognizable under the ADA.

For the foregoing reasons, defendant's motion for summary judgement is granted, and plaintiffs' complaint is dismissed in its entirety.

IT IS SO ORDERED.