Philip P. HUSKINS, Plaintiff,

v.

**PEPSI COLA OF ODGENSBURG BOTTLERS, INC., Defendant.**

No. 7:00–CV–377.

United States District Court, N.D. New York.

Nov. 8, 2001.

Jerry C. Leek, Potsdam, NY, for Plaintiff.

Bond, Schoeneck & King, Attorneys for Defendant, Syracuse, NY, Peter A. Jones, of Counsel.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

### BACKGROUND

Defendant ("the Corporation") is engaged in the business of bottling and mar-

keting of Pepsi Cola products in northern New York State within the confines of St. Lawrence County. The Corporation has approximately forty employees, ten of whom are drivers that deliver Pepsi products to the corporation's customers.

Plaintiff became a driver in December, 1993, operating the Corporation's product delivery vehicles to commercial establishments within St. Lawrence County, and unloading and arranging the Corporation's merchandise at each delivery point. He continued in this position until May, 1995, when he was unable work for a short period due to a work associated injury to his right shoulder. When the injury healed, plaintiff returned to work on his regular delivery route until September 14, 1998, when he sustained a left shoulder injury. Prior to receiving this injury, plaintiff had been promoted by the Corporation.

Plaintiff returned to work on September 22, 1998, but two days later, he reinjured the shoulder and stayed out of work until October 19, 1998. Upon undertaking his position as a delivery driver on that date, he was reinjured anew and again unable to work. On October 20, 1998, the Corporation met with plaintiff to discuss his status. At the meeting, the Corporation advised plaintiff that it would attempt to hold his driver position open as long as it was reasonably possible, but, if he was unable to work for a protracted time, it would become necessary to fill the position permanently with another driver. Plaintiff remained out of work after this meeting, except for a few hours on November 16, 1998, when he started but then was requested to stop because the Corporation was uncertain if it had received notice of his medical clearance. On December 2, 1998, the Corporation permanently filled plaintiff's position because it was not able to ascertain when he would be available to return to work.

Over two months later on February 2, 1999, plaintiff was medically cleared to return to work without restrictions. His former position having been filled, he was assigned to an open position as a Spare Driver/Preseller position. Plaintiff was further advised that he would be eligible for consideration for other positions, including his former position, as they opened up. Plaintiff agreed to return to work knowing that he would not be restored to his former position.

Plaintiff's first day back on the job was February 8, 1999, and was assigned, as he had been informed, to a Spare Driver/Preseller position. On February 16, 1999, after being told by a co-worker that the Corporation did not intend to return plaintiff to his former route, plaintiff requested and received a meeting with the Sales Manager Richard Wright. Corporate Controller Michael Looney was also present at the meeting. Plaintiff stated that he wanted to return to his previous position and asked when that would take place. Mr. Wright reminded plaintiff that his position had been filled and he could not be returned to this route. He also pointed out that they had previously discussed this state of affairs, and had agreed that he would be employed as a Spare Driver/Preseller until a vacancy in a Driver position took place. Plaintiff became argumentative at this statement, and maintained that Mr. Wright had promised to return him to his previous position when he was physically recovered, and called him a liar more than once. Plaintiff later admitted that Mr. Wright did not specifically promise him that he would get his old route back, but implied that he would. (Huckins Dep. 55–56, 219). As the parties were in close proximity at this time, Mr. Looney stepped between them, lightly touching plaintiff in

so doing, and unsuccessfully cautioned plaintiff to control his insubordinate language. Plaintiff's untoward behavior toward Mr. Wright resulted in his discharge from employment on February 16, 1999. This was the second time the Corporation had taken disciplinary action against plaintiff for an unreasonable exhibition of anger in the workplace. In 1997, plaintiff was given a written disciplinary notice and counseling concerning an incident during which he had lost his temper, became upset, and walked off the job.

Subsequent to his discharge, plaintiff filed a disability discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). The charge was investigated and dismissed on a finding of no probable cause, and plaintiff was issued a Right to Sue Letter. This action was commenced on March 2, 2000.

The amended complaint alleges violation of Subchapter I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA") asserting that defendant terminated plaintiff's employment due to his claimed disability. Plaintiff seeks compensatory and punitive damages, costs, interest and attorney's fees. Currently before the court is defendant's motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has entered opposition to this motion.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Feder-

al Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1991)(quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

Summary judgment is appropriate in discrimination cases for, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). The "impression that summary judgment is unavailable in discrimination cases is unsupportable." *McLee v. Chrysler Corp.*, 38 F.3d 67, 68 (2d Cir.1994). The Supreme Court has also recently reiterated that the trial courts should not "treat discrimination differently from other ultimate questions of

fact." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000)(quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 524, 113 S.Ct. 2742, 2756, 125 L.Ed.2d 407 (1993)).

The portion of the ADA applicable to the case at bar states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the discharge of employees ...," 42 U.S.C. § 12112(a). When considering a summary judgment motion in a discriminatory discharge brought under the ADA, the court applies the burden shifting test found in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). The test is composed of three parts—(1) plaintiff must demonstrate a *prima facie* of discrimination; (2) if the *prima facie* case is established, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions and, (3) if the defendant does so, the presumption created by plaintiff's *prima facie* case is removed, and the plaintiff then must prove the presence of intentional discrimination by showing by a preponderance of the evidence that the defendant's proffered reasons are only a pretext for the real motivation of discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–49, 125 L.Ed.2d 407 (1993).

 In order to create a *prima facie* case of discriminatory discharge under the ADA, a plaintiff must initially show that his employer is subject to the ADA, (2) he suffers from a disability within the meaning of the ADA, (3) he could perform the essential functions of his job with or without accommodation, and (4) he was fired because of his disability. *Reeves v. Johnson Controls World Services, Inc.*, 140

F.3d 144, 149–150 (2d Cir.1998). An employer is subject to the ADA if it is engaged in an industry affecting commerce and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, 42 U.S.C. §§ 121119(a) and (5)(A). Defendant Pepsi Cola of Ogdensburg Bottlers, Inc., sells and distributes Pepsi products throughout St. Lawrence County in northern New York state, it has approximately 40 employees, and, therefore, is an employer subject to the ADA.

A disability within the meaning of the ADA is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual," 42 U.S.C. § 12102(2)(A). To ascertain if a plaintiff is disabled for the purposes of ADA, three steps are taken, (1) decide if the plaintiff is afflicted with a physical or mental impairment, (2) name the life activity upon which plaintiff relies and confirm whether it is a major life activity under the ADA and, (3) determine if plaintiff's impairment substantially limits the major life activity relied on by plaintiff. *Bragdon v. Abbott*, 524 U.S. 624, 632–39, 118 S.Ct. 2196, 2202–05, 141 L.Ed.2d 540 (1998).

A disability under the ADA "does not include temporary medical conditions, even if those conditions require extended leaves of absence from work" because such conditions are not substantially limiting. *Halperin v. Abacus Technology Corporation*, 128 F.3d 191, 199 (4th Cir.1997). "Courts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act." *Graaf v. North Shore University Hospital*, 1 F.Supp.2d 318, 321 (S.D.N.Y.

1998); *Davis v. Bowes*, 1997 WL 655935 (S.D.N.Y. Oct.20, 1997)(plaintiff who suffered back injury resulting in six months absence from work not disabled under ADA where she recovered fully from the injury); *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047 (5th Cir. 1998) (temporary·episode of post traumatic stress disorder not a disability under ADA); *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 199 (4th Cir.1997)(plaintiff suffering from temporary back injury not disabled for purposes of ADA because "it is evident that the term 'disability' does not include temporary medical conditions"); *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996) (kidney obstruction requiring multiple operations and long absences from work not considered disability because of subsequent recovery); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir.1996)(temporary psychological impairment that lasted less than four months not a disability under the ADA, "a temporary injury with minimal residual effect cannot be the basis for an ADA claim"); *McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92, 95 (3d Cir.1995)(plaintiff who required abdominal surgery and an absence of almost two months was not disabled because of the temporary nature of the injury); *Lester v. Trans World Airlines, Inc.*, 1997 WL 417814 (N.D.Ill. July 23, 1997)(plaintiff, who suffered from tuberculosis requiring several weeks hospitalization and a nine month drug treatment, not disabled where she fully recovered from illness).

■ In Paragraph 7 of his amended complaint, plaintiff states that he could not perform the duties of a truck driver temporarily from September 1998 to February 16, 1999, was disabled from performing this type of job or similar jobs in the National Economy; that he suffered a dis-

ability which substantially limited his major life activities of all employment requiring lifting his hand above his head, weight lifting above twenty-five pounds (25), as well as sports and leisure activity. (Amended complaint ¶ 7). However, plaintiff admits that lifting over his head was not required for the delivery driver job he had with the Corporation. (Huckins Dep. 202), and that he was able to fully perform the job of a delivery driver after February 16, 1999. (Huckins Dep. 143). Furthermore, courts have held, as a matter of law, that a weight limitation such as plaintiff's when compared to an average person's abilities, "does not constitute a significant restriction on one's ability to lift, work or perform any other major life activity." *Williams v. Channel Master Satellite Systems, Inc.*, 101 F.3d 346, 349 (4th Cir. 1996), *cert. denied*, 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997); *Strassberg v. Hilton Hotels Corp.*, 1997 WL 531314 (S.D.N.Y. August 28, 1997), aff'd, 173 F.3d 846 (2d Cir.1999). Courts have also recognized that the inability to engage in leisure activities and sports, which require a great deal of physical vigor, does not equate with the inability to engage in normal everyday activities or job related duties. *Kirkendall v. United Parcel Service,Inc.*, 964 F.Supp. 106 *O'Dell v.Altec Industries, Inc.*, 1995 WL 611341 (W.D.Mo. Oct.16, 1995)

■ Plaintiff injured his shoulder while at work on September 14, 1998, and was unable to undertake his delivery duties. He returned to work for brief periods in September and October, but, on each occasion, the insufficiently rehabilitated shoulder again obliged him to discontinue his tasks and leave work. Plaintiff stated that he could fully perform his driver delivery duties on November 16, 1998, but the Corporation requested further medical information as to his physical condition.

(Huckins Dep. 139). In February 1999, plaintiff returned to work with no medical restrictions. (Huckins Dep. 139) In his amended complaint plaintiff admits that his period of disability ran from September 14, 1998 to February 16, 1999, but he was actually physically fit to return to work on November 16, 1998. (Amended Complaint ¶ 7, Huckins Dep. 139). Plaintiff further admits that he is not now disabled, has been employed as a beverage delivery driver for Vermont Pure Spring water, and has not been disabled for the past two years. (Amended complaint ¶ 7, Plaintiff's Memorandum of Law p. 9). Plaintiff has not established a *prima facie* case that he suffered from a disability within the meaning of the ADA because his disablement was temporary and, also, did not substantially limit the major life activities of working or lifting. Moreover, even though plaintiff has not shown that he has a cognizable ADA claim of discriminatory discharge, the defendant has, nonetheless, articulated a legitimate non-discriminatory reason for discharging him—plaintiff's insubordinate behavior toward his supervisor, Richard Wright, during the February 16, 1999, heated meeting that led to plaintiff's discharge from employment on that date. *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir.2000).

█ In his papers opposing defendant's summary judgment motion, plaintiff sets forth for the first time in this action, claims that the defendant employer perceived him as disabled, failed to accommodate his disability, and subjected him to a hostile work environment. The court will not consider these new claims for two reasons. First, the claims were not administratively exhausted before the EEOC, before being included in an ADA law suit, and they could not be reasonably expected to grow out of the initial EEOC charge of disability based employment discharge.

*Miller v. International Telephone & Telegraph*, 755 F.2d 20, 26 (2d Cir.) *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)("[t]he purpose of the notice provision, which is to encourage settlement of discrimination disputes through conciliation and voluntary compliance, would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC"); *Stewart v. United States Immigration and Naturalization Service*, 762 F.2d 193, 198 (2d Cir.1985). Second, because it is "inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Beckman v. United States Postal Service*, 79 F.Supp.2d 394, 407 (S.D.N.Y.2000). Accordingly, defendant's motion for summary judgment is **GRANTED,** and the amended complaint is **DISMISSED.**

IT IS SO ORDERED