Marc RUGGLES, Plaintiff,

v.

KEEBLER COMPANY, Defendant.

No. CIV.A.00–2481–GTV.

United States District Court,
D. Kansas.

Oct. 15, 2002.

J. Earlene Farr, Brandon D. Mizner, Ensz & Jester, P.C., Kansas City, MO, for Plaintiff.

Paul F. Pautler, Jr., Blackwell Sanders Peper Martin LLP, Kansas City, MO, Nicole T. Bock, Blackwell Sanders Peper Martin LLP, Omaha, NE, for Defendants.

## MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiff Marc Ruggles brings this case alleging that his employer, Defendant Keebler Company, discriminated against him because of his actual or perceived disability, violating the Americans with Disabili-

ties Act ("ADA"), 42 U.S.C. § 12101 et seq. and the Kansas Act Against Discrimination ("KAAD"), K.S.A. § 44–1111 et seq. He further alleges that Defendant discriminated against him because of his age, violating the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. and the KAAD. Finally, Plaintiff alleges that Defendant subjected him to intentional infliction of emotional distress, violating Kansas common law.

The case is before the court on Defendant's Amended Motion for Summary Judgment (Doc. 97). For the reasons stated below, the court grants Defendant's motion.

## I. FACTUAL BACKGROUND

The following facts are taken from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff's case. Immaterial facts and facts not properly supported by the record are omitted.

Plaintiff is over age forty. He began working for Defendant in 1976 as a territory sales representative. Plaintiff sold products to retail stores in his territory, ordered merchandise, stocked merchandise, set advertisements, built displays, and sold displays.

On September 22, 1998, Plaintiff had surgery on his right knee, and Defendant placed him on short-term disability leave. On January 8, 1999, Plaintiff had his left knee replaced. As a result of Plaintiff's knee replacement surgery, Defendant extended Plaintiff's short-term disability benefits through March 22, 1999. Plaintiff testified by affidavit that Defendant told him he needed to apply for "long-term disability." Beginning March 22, 1999, Defendant placed Plaintiff on long-term disability leave.

On March 19, 1999, Defendant received "return to work restrictions" from Plaintiff's physician. The physician indicated that Plaintiff should not lift over thirty pounds or climb ladders and should not engage in repeated bending, kneeling, squatting, climbing, or crawling. Scott Bohbrink, a corporate human resources representative, testified in deposition that both he and Zane Phlegar, Plaintiff's Zone Manager, thought the restrictions were "ambiguous." Phlegar called Plaintiff and told him that with the restrictions, he did not feel that Plaintiff could "do [his] job." Plaintiff had told Phlegar in an earlier conversation that he thought that he could do his job if he sat on a milk crate while working on lower shelves in stores.

Deposition testimony in this case indicates that no one made a formal decision as to whether Plaintiff was disabled under the ADA. Rex Smith, Plaintiff's supervisor, testified that he understood that no one could make a determination regarding Plaintiff's ability to return to work until they received more information from Plaintiff's doctor. Phlegar testified that he did not determine whether Plaintiff was disabled because it was not "his call" and he really did not know how to make the determination. Bohbrink testified that they were gathering information to determine whether Plaintiff had a protected disability and whether, if Plaintiff was disabled, he could be accommodated.

In February 1999, Smith decided to advertise Plaintiff's position. In late March 1999, Brian Anderson, a twenty-two year old student at Pittsburgh State University, submitted his resume in response to a job posting by Defendant, which was also posted in late March. In April 1999, Smith interviewed Anderson. During the interview, Smith told Anderson that the current territory sales representative (Plaintiff) had been off for several months and that Smith did not know whether he would return to work. Smith told Anderson that it would be about six weeks before he got

back with Anderson. Two weeks later, Smith conducted a brief follow-up interview with Anderson and informed him that he still did not know about Plaintiff's status—they were waiting on word from his doctor. In mid-May, Smith offered Anderson a job as a "floater" because he still did not know whether Plaintiff would return to work. Approximately a week later, Smith offered Anderson Plaintiff's territory.

On May 14, 1999, Phlegar called Plaintiff and informed him that his territory could no longer remain open. The next day, Bohbrink called Plaintiff and told him that he was still employed by Defendant, but on inactive status. Anderson began working for Defendant on May 31, 1999. Since that time, two other employees, both under age forty, have held Plaintiff's position.

Smith and Bohbrink were both over forty years old at the time Plaintiff was replaced by Anderson, but Phlegar was approximately thirty-seven. Persons over age forty applied for Plaintiff's position, but were not hired. Smith testified that only Anderson had grocery store experience.

On or about October 20, 1999, Joanne Spatz, an attorney for Defendant, wrote Earlene Farr, Plaintiff's attorney, a letter. Spatz stated that, assuming Plaintiff's medical condition had improved, Defendant was prepared to offer Plaintiff the first available territory manager position in its Oklahoma City zone or a similar position if Plaintiff provided a current medical fitness-for-duty statement from his physician. Plaintiff did not supply Defendant with a fitness-for-duty statement in response to the letter.

On or about November 5, 1999, Spatz again wrote Farr, this time offering Plaintiff his former position. Plaintiff did not respond to the second letter because he planned to undergo replacement surgery on his right knee. On or about December 7, 1999, Farr telephoned John Phillips, another attorney for Defendant, and left a message indicating that Plaintiff had just undergone another knee surgery and would not be able to return to work for two or three months.

After the knee surgeries, Plaintiff had "new knees." Plaintiff testified in deposition that neither of his knees bother him, but that he tries not to repeatedly bend, squat, or kneel. Plaintiff also testified that his new knees "do not affect [his] daily life in an adverse way." He can lift up to thirty pounds without problems. The only activity that he cannot do that he would like to do is crawl on the floor with his grandchildren. He also cannot run or trim trees.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

### A. ADA Claims

Plaintiff claims that Defendant refused to offer him reasonable accommodation and discharged him because he has a disability as defined by the ADA. The ADA prohibits such discrimination: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

There is no direct evidence of discrimination in this case. In considering an ADA claim that lacks direct evidence of discriminatory motive, the court is bound by the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (citation omitted) (adopting McDonnell Douglas framework for ADA claims). McDonnell Douglas provides a three-step, burden-shifting process by which to evaluate claims of discrimination. First, Plaintiff must establish a prima facie case of discrimination. See *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Once Plaintiff establishes a prima facie case, the burden shifts to Defendant. Defendant must offer a legitimate reason for the adverse action. See *id.* Finally, if Defendant offers a legitimate reason, the burden returns to Plaintiff. Plaintiff must establish "a genuine dispute of material fact as to whether [Defendant's] proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995).

To establish a prima facie case of disability discrimination, Plaintiff must show, among other things, that he has a "disability" as defined by the ADA. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." Id. § 12102(2). Plaintiff claims that he is either actually disabled (under subsection (A)) or regarded as disabled (under subsection (C)). The court disagrees.

#### 1. Actual Disability

■ In order to establish that he has an actual disability, Plaintiff must show that he has an impairment that substantially limits a major life activity. Id. Moreover, Plaintiff must "articulate with precision the impairment alleged and the major life activity affected by that impairment." *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1232 (10th Cir. 1999). The court is to analyze only a major life activity identified by Plaintiff. *Id.* at 1231 (citing *Bragdon v. Abbott*, 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d

540 (1998)). Both whether Plaintiff has an impairment and whether an identified endeavor is a major life activity are issues of law for the court to decide. *Bristol v. Bd. of County Comm'rs*, 281 F.3d 1148, 1157 (10th Cir.2002) (citations omitted).

■ Plaintiff fails to explicitly identify either his impairment or the major life activity it substantially limits. At one point, Plaintiff terms his impairment as his "knee replacement." Later, he refers to his restricted ability to "crawl, kneel, squat, climb ladders, and bend at the knee" as his impairment. Within the same discussion, Plaintiff states that he cannot lift over thirty pounds. The court assumes without deciding that Plaintiff's limited use of his knees constitutes an impairment under the ADA.

With respect to the major life activities affected by his impairment, Plaintiff's brief states:

> Ruggles has articulated ways in which his impairments affect his daily life; e.g. his inability to play with his grandchildren, trim trees, and run. Common sense and a reasonable consideration of his impairments illustrate there are many other daily activities which are affected. In the normal course of life, people kneel, and squat and crouch (e.g. getting into low drawers or kitchen cabinets, putting a plug in a bathtub, bending to pick up a dime dropped on the floor, looking under a chair for something that has rolled under it, filling a dog's food dish).

> .    .    .    .    .

> Plaintiff can clearly not do many home repairs or maintenance jobs that are considered a part of ordinary life by most people. His inability to lift more than thirty pounds limits his ability to carry

groceries, grass seed, fertilizer, potting soil, or small items of furniture. All of these activities are those performed by many people, regardless of age or sex, both fit and out-of-shape, and which are considered by them to be part of their daily activities.

The court first notes that only the first sentence of the above-quoted excerpt has any support in the record at all. The remainder appears to be an attempt by Plaintiff's counsel to ask the court to take judicial notice of activities Plaintiff and the general population can and cannot do. Unsupported speculation by Plaintiff's counsel is not admissible evidence. If Plaintiff could not engage in the activities mentioned above, he could have testified or filed an affidavit to that effect. Counsel also could have employed an expert to testify regarding activities the average person can engage in.

The court next notes that the statement that Plaintiff cannot "play with his grandchildren" is an inaccurate recapitulation of the evidence in the case. Plaintiff's deposition testimony was that he could not crawl on the floor with his grandchildren, which is less limiting than not being able to play with his grandchildren at all.

The identified endeavors the court will consider are those supported by the record—crawling on the floor with grandchildren, trimming trees, running, and lifting more than thirty pounds.[1] The court concludes that three of the four do not constitute major life activities. A major life activity must be just that—a *major* life activity. The Supreme Court has quoted with approval a First Circuit opinion explaining that "[t]he plain meaning of the word 'major' denotes comparative importance" and "suggest[s] that the touchstone

---

1. Plaintiff appears to have identified "lifting" as an impairment rather than a major life activity. His designation is ambiguous, however, and the court will consider whether, in this case, it constitutes a major life activity.

for determining an activity's inclusion under the statutory rubric is its significance." *Abbott v. Bragdon,* 107 F.3d 934, 939, 940 (1st Cir.1997), quoted in *Bragdon,* 524 U.S. at 638, 118 S.Ct. 2196.

The court first addresses the endeavors of crawling on the floor with grandchildren, trimming trees, and running. Although research has not revealed a Tenth Circuit opinion considering whether these exact endeavors are major life activities, other Circuits have considered similar endeavors and found that they are not. *See, e.g., Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 951 (7th Cir.2000) (noting that an argument that mowing the lawn is a major life activity would not be meritorious); *Weber v. Strippit, Inc.,* 186 F.3d 907, 914 (8th Cir.1999) (stating that shoveling snow, gardening, mowing the lawn, playing tennis, fishing, and hiking are not major life activities); *Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 642–43 (2d Cir. 1998) (holding that many activities, including skiing, golfing, doing yard work, shoveling snow, and engaging in other physical exercise, are not major life activities); *see also Kirkendall v. United Parcel Serv., Inc.,* 964 F.Supp. 106, 110–11 (W.D.N.Y. 1997) (holding that the plaintiff's listed activities, including playing with his children in a "normal fashion," were not major life activities).

The endeavors of crawling on the floor with grandchildren, trimming trees, and running are no more "major" than the activities considered by the courts in the preceding paragraph. The court concludes that they do not constitute major life activities.

"Lifting," in contrast, is considered a major life activity. *Lowe v. Angelo's Italian Foods, Inc.,* 87 F.3d 1170, 1173 (10th Cir.1996) (quoting 29 C.F.R. pt. 1630, App. § 1630.2(i)). However, the Tenth Circuit has held in an unpublished opinion that the inability to lift over twenty pounds is not a substantial limitation on the major life activity of lifting. *McCoy v. USF Dugan, Inc.,* 42 Fed.Appx. 295, 2002 WL 1435908, at *2–3 (10th Cir.2002). The court cites this opinion for its persuasive value and holds that Plaintiff's thirty-pound lifting restriction is not a substantial limitation on the major life activity of lifting.

■■■ As for Plaintiff's other identified endeavors, even if the court were to accept that they are major life activities, Plaintiff has offered no evidence to establish that such activities are "substantially limited." "An impairment 'substantially limits' a major life activity if the individual is unable to perform the activity or is significantly restricted in the ability to perform the major life activity *compared to the general population.*" *Lusk v. Ryder Integrated Logistics,* 238 F.3d 1237, 1240 (10th Cir.2001) (citing 29 C.F.R. § 1630.2(j)(1)) (emphasis added). Where an impairment is not substantially limiting on its face, the plaintiff must produce evidence of how his condition differs from that of an average person. *Bristol,* 281 F.3d at 1161 n. 4 ("Bristol pointed to no evidence of how much the average person can lift. Without this evidence, a factfinder cannot make the comparison between Bristol and the 'average person' as ADA regulations require."); *Lusk,* 238 F.3d at 1241; *Doyal v. Okla. Heart, Inc.,* 213 F.3d 492, 497 (10th Cir. 2000) ("Because Doyal introduced no evidence suggesting she experienced greater difficulty than anybody else learning the new computer system or any other new material, she has failed to demonstrate that she was significantly restricted in learning.").

Here, Plaintiff's limited use of his knees is not substantially limiting on its face. Plaintiff has presented no evidence of what activities members of the general population can engage in. The unsupported speculation by Plaintiff's counsel on what

an average person can do is inadmissible evidence. The court therefore concludes that no genuine issue of material fact exists as to whether Plaintiff has an actual disability under the ADA.

## 2. Regarded as Disabled

■ Plaintiff may also be covered under the ADA if he can demonstrate that Defendant regarded him as disabled. 42 U.S.C. § 12102(2)(C). A person is regarded as disabled if either of the following requirements is met:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). With the "regarded as" provision, Congress sought to protect those discriminated against based on "myths, fears and stereotypes." 29 C.F.R. pt. 1630, App. § 1630.2(*l*); *see also Sch. Bd. of Nassau County v. Arline,* 480 U.S. 273, 284, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

■ In support of his argument that Defendant regarded him as disabled, Plaintiff states:

> Keebler told Ruggles that he was considered to be disabled, and therefore could not be returned to his job. He was told by ... Defendant that he needed to apply for disability insurance.... Defendant began seeking a replacement for Plaintiff weeks before they were even aware that Plaintiff would have

restrictions, or what those restrictions might be.

Finally, Plaintiff's supervisor testified that he considered Plaintiff to be disabled.

The court rejects each of Plaintiff's arguments. The first sentence is not supported by the record. The court is unable to find where a representative of Defendant told Plaintiff that he was "considered to be disabled." Plaintiff has not guided the court by referencing a specific fact number or citation in the record.

Second, the fact that Defendant recommended that Plaintiff apply for disability insurance is inapposite. The standards for receiving disability insurance are different from the standards for being "disabled" under the ADA. "Disability is a term of art under the ADA." *Doyal,* 213 F.3d at 495. Use of the generic term "disability" does not constitute evidence that Defendant regarded Plaintiff as disabled under the ADA. See *Lusk,* 238 F.3d at 1242. Plaintiff must present evidence that Defendant "treated or regarded him as having an impairment that substantially limits his major life activity . . . ." *Id.*

Third, the fact that Defendant sought a replacement for Plaintiff before his restrictions were known does not indicate that Defendant regarded Plaintiff as disabled. The uncontroverted evidence indicates that Defendant began interviewing for Plaintiff's position before Plaintiff's restrictions were known, but intentionally delayed offering the job to Anderson until after receiving the restrictions from Plaintiff's physician. At the time Smith offered Anderson the job, Phlegar had told Plaintiff that he did not think that Plaintiff could "do [his] job." However, Defendant's belief that Plaintiff could no longer do his particular job does not equate to a belief that Plaintiff was disabled. See *id.* at 1241 ("Defendant's belief that Plaintiff could no longer perform a job that re-

quired lifting in excess of Plaintiff's capabilities does not mean that Defendant regarded Plaintiff as disabled.") (citation omitted). Again, the standard is that Defendant must have perceived Plaintiff's impairment as substantially limiting a major life activity. *Id.* at 1242.

Plaintiff has failed to specifically identify any major life activities which he believes Defendant perceived him as being substantially limited in. While "working" is a major life activity (albeit one that Plaintiff has failed to identify), performing one particular job is not. *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139; *Sorensen v. Univ. of Utah Hosp.,* 194 F.3d 1084, 1089 (10th Cir.1999); 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."). The Supreme Court has held that "[w]hen the major life activity under consideration is that of working, the statutory phrase 'substantially limiting' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139. While Plaintiff may have presented evidence that Defendant did not believe he could work in the job to which he was assigned, Plaintiff has presented no evidence which would indicate that Defendant perceived him as unable to work in "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3).

■ Finally, the testimony Plaintiff cites for the proposition that Smith considered him to be disabled is inadmissible. The deposition testimony is as follows:

*Plaintiff's Attorney:* Do you know who it was at Keebler that made the determination that Mark Ruggles was disabled and unable to come back to work?

*Defendant's Attorney:* Let me object for the record that that assumes facts not in evidence but if you know, you can answer.

*Smith:* I do not know.

*Plaintiff's Attorney:* Who communicated that decision to you?

*Defendant's Attorney:* Same objection. You can answer.

*Smith:* Zane.

The question is a compound question and assumes facts not in evidence. Each of the decision-makers in this case testified specifically that they lacked the information to determine whether Plaintiff was disabled. All of the admissible evidence in the case indicates that no one made the decision to treat Plaintiff as disabled because they did not have the information necessary to make that determination. Plaintiff has failed to establish that there is a genuine issue of material fact as to whether Defendant regarded Plaintiff as disabled with this deposition testimony excerpt. The court need not consider the remainder of the parties' arguments or whether Plaintiff has met the other elements of his prima facie case.

In sum, the court concludes that Plaintiff has failed to establish that a genuine issue of material fact exists as to whether he has an actual disability or whether he is regarded as disabled under the ADA. For these reasons, the court grants summary judgment on Plaintiff's ADA claims.

## B. ADEA Claim

■ Plaintiff next claims that Defendant discriminated against him because of his age. The same McDonnell Douglas standard that applies to Plaintiff's ADA claim also applies to his age discrimination claim. *Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1165 (10th Cir.2000) (citations omitted). The court assumes without deciding that Plaintiff can establish a prima facie case of age discrimination. Defendant has offered a legitimate, non-

discriminatory business rationale for its decision—sales in Plaintiff's territory were falling and Defendant saw a business need to fill Plaintiff's territory. The burden thus shifts back to Plaintiff to offer evidence of pretext. The court concludes that Plaintiff has failed to meet this burden.

The court first notes that, at the time his deposition was taken, Plaintiff testified that he had no reason to believe that any of Defendant's actions were based on his age, except that he thought Defendant could pay younger, less-experienced employees less. While this admission is not dispositive on the issue of age discrimination, the court considers it worth noting.

As evidence that the reason given for Defendant's decision to replace Plaintiff was pretextual, Plaintiff has submitted numerous confidential documents pursuant to the court's Protective Order dated March 12, 2002. Some of the documents are employment applications, some are memoranda, and others are handwritten notes. Plaintiff failed to explain exactly how he maintains these documents show pretext. For example, Plaintiff's submitted "uncontroverted fact" number 69 states, "Keebler specifically takes age into account in employment decisions. [Ex.N; Ex. S]." Exhibit N is a collection of apparently unrelated, unidentified, unauthenticated documents.[2] The court has no way of ascertaining their meaning or relevance. The only document in the collection that the court can tell was written by a decision-maker in this case is an e-mail drafted by Phlegar that states, "Let's start [recruiting] with the young lady we

interviewed in Wichita. She should be your next hire. . . . So after this young lady, who's second in line to replace someone in your district that might get promoted[?]" To the extent that Plaintiff wants the court to insinuate that the use of the term "young lady" shows that Defendant's reason for replacing Plaintiff was pretextual, the court declines to do so. Even if the term "young lady" reflects a focus on a female's age, it is nothing more than a stray remark. "Stray remarks" are insufficient evidence of pretext. *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1129 (10th Cir.1998); *Smith v. Bd. of County Comm'rs,* 96 F.Supp.2d 1177, 1190 (D.Kan.2000) (holding that two comments over a six-year period about liking "young minds" and teaching an old dog new tricks were insufficient to raise a triable issue of pretext).

Exhibit N also includes an e-mail from Roger Richardson (who the court assumes is an employee of Defendant) to Bohbrink stating, "Attached is the information you asked for." The attached document appears to be a listing of territory managers in the Omaha West District, their ages, years of service, and their performance rating. Presumably, Plaintiff expects the court to infer that, because Bohbrink asked for data including the ages of the territory managers in a district, he decided to replace Plaintiff because of his age. The court will not make the requested leap of logic.

Exhibit S consists of unexplained, unauthenticated documents regarding a reduction in force initiative where employees

---

**2.** Ordinarily, the court would decline to consider the documents because they have not been authenticated. In this case, the parties have stipulated that business records produced by the parties in discovery need not be authenticated. The documents at issue appear to have been produced by Defendant and appear, on their face, to fall under Fed.

R.Evid. 803(6), although Plaintiff's counsel has failed to offer an affidavit stating as much. Because even with the documents, summary judgment is warranted, the court does not grant summary judgment based solely on the fact that the documents are not authenticated.

over age fifty-five could volunteer for termination. The court is unable to determine whether the initiative was even implemented, and if so, when. It appears from the documents that it may have been in 1994, five years before Plaintiff's position was filled. In any event, Exhibit S is inadequate evidence to show that a genuine issue of material fact exists as to whether Defendant's reason for replacing Plaintiff was pretextual.

Plaintiff also asserts that younger employees were given transitional work by Defendant but that he was denied such an opportunity. In support, Plaintiff attaches another group of unexplained, unauthenticated documents. It is impossible to tell from the documents whether the same decision-makers were involved or what the circumstances were surrounding the decisions. Comments made or actions taken by non-decision-makers are irrelevant in a determination of whether Plaintiff has shown that there is a genuine issue of material fact regarding pretext. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994).

Finally, Plaintiff alleges that Defendant hired additional merchandisers to help his younger replacements. He cites this as evidence of age discrimination because Defendant did not offer to hire additional merchandisers to help Plaintiff stock lower shelves. Plaintiff has not directed the court to evidence which would explain the context of Defendant's decision to hire additional merchandisers. Absent such evidence, the court cannot conclude that a genuine issue exists for a jury.

The court has considered all of Plaintiff's arguments and evidence regarding pretext, whether mentioned in this opinion or not. Viewing the admissible evidence in the light most favorable to Plaintiff, the court concludes that there is no genuine issue of material fact as to whether Defendant's reason for replacing Plaintiff was pretextual. Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

### C. State Law Claims

Having granted summary judgment as to all of Plaintiff's claims over which the court has original jurisdiction, the court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3) (1994); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's amended summary judgment motion (Doc. 97) is granted.

The case is closed.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**